TYSON, Judge.
The indictment charged Dillard Wayne Summers with the robbery of William Sam- *534 pie by putting him in fear and taking from his person “One (1) watch, of the value of, to-wit: $75.00; One (1) money clip, of the value of, to-wit: $10.00.” The jury found the appellant “guilty as charged” and fixed punishment at ten years imprisonment. The trial court then set sentence in accordance with this verdict.
William J. Sample testified he was employed by the Venderbush Sheet Metal Company and worked out of their home office, which is located in Detroit, Michigan. Mr. Sample stated that on December 11, 1975, he was in Huntsville, Alabama on business for his company and was a registered guest at the Kings Inn Motel located on the North Parkway in Huntsville. The witness testified he was in his room taking a shower around 6:30 p. m. when he heard someone knocking at his motel room door. Mr. Sample stated that he went to the door and opened it slightly to see who his visitors were, then heard someone call the name “Bill.” The witness testified he then opened the door a little further, whereupon he saw a man standing outside his room with a knife. Mr. Sample stated that at this time he attempted to shut his door, but two men, one armed with a sawed-off shotgun and the other with a knife, forced the door open and pinned him between the wall and the door. The witness testified that one of the men placed the shotgun under his chin and threatened to “blow my head off,” then threw him “face down on the bed.” Mr. Sample stated that while one of the men would go through his belongings, the other would demand that he remain in his “face down” position by prodding him either with the knife or gun, which resulted in his sustaining a “small cut” on his left foot and a “lump” on the back of his head. Mr. Sample testified that the men took several items from his room, including the watch and money clip referred to in the indictment. The witness testified that the two men ripped the telephone connection out of the wall, told him not to inform the police “right away,” then left. Mr. Sample stated he then went to another room in the motel and called the police. The witness positively identified the appellant in court as the man with the sawed-off shotgun the night of the robbery, and stated that he had picked the appellant’s picture from among several other photographs when they were displayed to him by Detective Turner at the General Motor’s plant near Athens, Alabama, subsequent to the incident in question. Mr. Sample noted that the appellant’s skin was “very dark complected,” and thought that at the time of the robbery the appellant could possibly be “a black person of some generations removed.” Mr. Sample further testified that shortly before the appellant’s trial, he made a positive identification of the appellant in a lineup conducted in the Madison County Jail. A photograph depicting this lineup was admitted into evidence without objection.
Detective Patrick Dillaha of the Huntsville Police Department testified he conducted the initial investigation of the robbery scene on the night of December 11, 1975, and stated that he lifted several latent fingerprints from Mr. Sample’s motel room, but found none to be “identifiable.” Detective Dillaha also stated that Mr. Sample told him the night of the robbery that “the taller of the subjects [the appellant] could have been a colored male.”
Detective Howard Turner testified that subsequent to the incident in question, he went to Mr. Sample’s job site near Decatur and displayed to him five mug shots from which Mr. Sample identified the two men that perpetrated the robbery on December 11, 1975. All of the pictures which were shown to Mr. Sample during this identifying procedure were offered in evidence without objection, and the appellant’s photograph was marked “State’s Exhibit # 8.” Detective Turner testified that at the time Mr. Sample selected the appellant’s photograph, he commented only that the appellant’s face “seemed familiar to him,” but made a more definite identification of the appellant’s alleged accomplice, Greg Mel-lotte, by writing on the reverse side of Mellotte’s photograph, “This is the subject that robbed me and was holding the knife.”
After the State rested its case, the appellant made a motion for a “directed verdict” *535 alleging “an uncommitted communication of identification” which was denied by the trial court. The appellant presented no defense and announced “Satisfied” at the conclusion of the trial judge’s oral charge to the jury.
I
During the direct examination of Mr. Sample, the State attempted to offer into evidence a sawed-off shotgun allegedly used by the appellant in the commission of this offense. The record at page 31 disclosed the following:
“Q. Mr. Sample, I show you this item marked State’s Exhibit 3 and ask you if you have ever seen that before?
“A. It’s really hard to say. I believe I have seen it before but I couldn’t honestly give you a yes or no as to it.
“MR. MORGAN: You may cross examine.
“MR. CARTRON: Your Honor, I have got a motion to make first and I think it should be made outside the presence of the jury.
“THE COURT: All right, ladies and gentlemen, would you please go to the jury room. We will take just a short recess. If you will, just go to the jury room. “(Thereupon, the jury left the courtroom and went into the jury room, at 10:25 A.M., at which time, outside the presence and hearing of the jury the following proceedings were had and done:)
“THE COURT: Okay, if you will, state your motion, Mr. Cartron.
“MR. CARTRON: The Defendant at this time would move for a mistrial cfh the basis that the proposed sawed-off shotgun is prejudicial and extremely harmful to the Defendant. There has been no identification of said weapon and we would indicate to the court that the same vain attempt was made to introduce such evidence at another trial. This, in itself, should have put the prosecution on notice that the—
“THE COURT: Well, let me ask the State this; do you intend to — well, that is correct there was an attempt to introduce the shotgun or at least the shotgun was part of another trial but the issues in that trial are different and the witnesses are different. I will ask the State though, whether or not you intend to ask this witness if he can identify this shotgun?
“MR. MORGAN: Yes, sir, this witness on his direct testimony—
“THE COURT: Was it here during the examination of him earlier?
“MR. MORGAN: No, sir.
“THE COURT: You just brought it?
“MR. CARTRON: No, Judge, he has already testified that he could not identify this particular gun.
“THE COURT: I don’t recall that testimony. I don’t believe he was presented this weapon and asked about it.
“MR. MORGAN: Yes, sir, I did.
“THE COURT: Did you do that in direct examination?
“MR. MORGAN: I sure did, I had it marked for identification.
“THE COURT: All right, I am sorry.
“MR. MORGAN: And I asked him if he had ever seen this shotgun before and could he identify it, I think was in essence what I asked.
“THE COURT: I missed that and I apologize for it.
“MR. MORGAN: And his response to that was, I think so but I can’t be positive.
“MR. CARTRON: Yes, sir, that he was not sure. ,
“THE COURT: Well, then I will ask you to put it back in the bag and we will proceed further. There will be no mistrial on that basis.
“MR. CARTRON: Can we ask the jury to disregard that portion of the testimony?
“THE COURT: I think the jury understands his testimony as that shotgun not having been identified and I think that they will take that testimony at that value that he could not identify it, and therefore it could not be considered as evidence.
*536 “MR. CARTRON: Your Honor, the Defendant would request the Court to instruct the jury that they disregard it.
“THE COURT: That they disregard—
“MR. CARTRON: Any testimony concerning that.
“THE COURT: No, I will not instruct the jury that they disregard any testimony concerning—
“MR. CARTRON: Concerning a shotgun.
“THE COURT: Concerning a shotgun-now, what is the exhibit number?
“MR. MORGAN: Three.
“MR. CARTRON: Three.
“THE COURT: I will instruct the jury that it is not in evidence; that they are not to consider it as being in evidence or as having been identified.
“All-right, it will be just one more minute before we get started.
“(Thereupon, the jury returned to the courtroom at 10:45 A.M., at which time, in the presence and hearing of the jury, the following proceedings were had and done:)
“THE COURT: Ladies and gentlemen, before we begin cross-examination I want to caution you that State’s Exhibit 3 which is a shotgun or a weapon of some description is not in evidence and is not to be considered by you as evidence in this case and you are not to give any consideration to that at this point in this case and so I caution you to exclude that from your consideration at this point.” [R. 31-36]
Although the shotgun, marked State’s Exhibit # 3, was never allowed into evidence for the jury’s consideration, Mr. Morgan, the Assistant District Attorney, made reference to this weapon during his closing argument. The record reflects the pertinent part of his argument as follows:
“MR. MORGAN: And I showed to him a weapon of that description and I am satisfied was the weapon used—
“MR. CARTRON: We object and ask that that be excluded.
“THE COURT: Sustained.
“MR. CARTRON: And ask that the jury disregard that statement.
“THE COURT: Ladies and gentlemen, disregard the last remark by counsel. “(Thereupon, Mr. Morgan continued and concluded addressing the jury in final argument, on behalf of the State, there being no further objections made nor exceptions reserved, following which the following proceedings were had and done:)” [R! 71-72] '
The appellant contends the district attorney’s remarks concerning the “weapon used” were improper per se in that they constituted a statement of fact previously excluded from evidence and were designed solely to inflame, incite, and prejudice the minds of the jury against .the appellant.
In the instant case the trial court sustained the appellant’s objection to the alleged improper remarks to which we have above referred, and also complied with the appellant’s request for instruction to the jury to disregard them. Absent from the record is any further objection or motion made by the appellant concerning the prejudicial effect of these remarks, and thus, there being no ruling adverse to the appellant in this regard, nothing is presented for our review. Tooson v. State, 56 Ala.App. 613, 324 So.2d 327 (1975); Simon v. State, 181 Ala. 90, 61 So. 801 (1913); Wilson v. State, 56 Ala.App. 13, 318 So.2d 753 (1975).
A careful examination of the record, as required by Title 15, Section 389, Code of Alabama 1940, reveals no reversible error. Accordingly the judgment of conviction is hereSy
AFFIRMED.
All the Judges concur.